The opinion of the court was delivered by
Spencer, J.
The plaintiff on 5th May, 1875, employed Locke as-station and ticket agent of said company at Monroe, La. To secure his employer, Locke on that day executed his bond for $2500 in solido with ~W. EL EL Mullin and R. G. Cobb as his sureties. The bond recites that “the condition of its obligation is such, that whereas the said Joseph W. Locke has been appointed by said John W. Green, receiver, to the position of station and ticket agent for the reoeivership, at Monroe, during the pleasure of said receiver.
“Now therefore if the said Locke shall well and truly discharge and perform all the duties incumbent on him in his said capacity of station and ticket agent for the receiver, and shall render a true and faithful account of all freights which may be delivered at his station, whether *657 for shipment or for delivery, and also of all moneys, bills, etc., belonging to said receivership, which may come into his hands or be due and payable at his station, according to the instructions and orders of the said receiver, then this obligation is to be null and void, otherwise to be and remain in full force and virtue.”
Locke entered upon the discharge of his duties soon after at $100 per month, and continued therein up to 12th April, 1876. From that date to the 17th June, 1876, he was employed by the receiver at sixty dollars per month, to conduct a line of skiffs for the railroad, carrying the United States mails between Delhi and Boeuf river, in Bichland parish. This was in consequence of the overflow of the railroad by the floods of that year. During these two months his salary as station and ticket agent at Monroe was by notice from the receiver discontinued, and Locke devoted his whole time to the superintendence of the skiff line. Through assistance and solicitation of Green; the receiver, he was also appointed by the United States postoffice department, as route agent, on the line from Delhi to Bceuf river; was duly sworn and qualified as such, and received a salary as such from the United States government during said two months. On 17th June, 1876, after cessation of overflow, Locke returned to Monroe and resumed charge and control of the freight and ticket office at Monroe, and continued therein up to 7th January, 1878. Of the receipts at said office, for the month of December, 1877, and up to 4th January, 1878, Locke failed to pay over the sum of $2045 30. The present suit is brought against him and his sureties in solido to recover that amount.
Locke’s answer is in substance a general denial — admitting however his liability for about $800. He avers that the balance of the deficit, $1200, is not chargeable to him, for the reason that on 23d December, 1877, he was ordered by the agent of the receiver to leave his office and duties as station and ticket agent at Monroe, and take charge of a train and act as conductor, for four or five days, and that another person, B. W. Jamison, was placed in charge of his office and business during this time; and that the said deficit of $1200 resulted from the mismanagement of Jamison, who failed to pay over and account for that sum, received during his occupancy of that office. That Jamison’s shortcomings cannot be charged to or recovered from respondent.
There is no disputing the fact that there was a defalcation of $2045 30 at the Monroe office. The testimony of Green, the receiver, and of McGuire and Milling, satisfies us that Jamison did pay over and account for his receipts. Locke’s own weekly and monthly statements fix his liability to the company. The evidence is voluminous, and it would be impracticable, within the compass of an opinion, to review it at length. Suffice it to say that it satisfied the court below and satisfies us that Locke owes the amount claimed of him.
*658 But it is urged in behalf of defendant that the court erred in overruling his application for trial by jury. It is not disputed that the case was one properly-jtriable by jury, but the question is whether the defendant complied with the requirements of the law in his application. The act No. áá of 1877, sec. 9, requires that before a jury shall'be ordered in any civil case, the party applying for it shall deposit with the clerk a jury fee of $12. The defendant’s answer, containing the prayer for jury was filed on 29th April, 1878, during the motion hour — the counsel announcing at the time that the fee had not been paid, and that he desired no action on the prayer for jury until the deposit was made. The plaintiff moved the court that the defendant be ordered to make said deposit by 3 p. m. of that day, and on his failure so to do, that his application for jury be refused. The court so ordered, and defendant having failed, his application was overruled. Defendant excepted, on the ground that. he had time until the case was reached in its order and fixed for trial, and that until then the court could render no order in the matter.
We think the rule contended for by defendant would be impracticable in the country parishes, and would often operate either an indefinite continuance of a case, or necessitate the indefinite retention of the-jury. Under the rules of the court for Ouachita, the first week is devoted to civil cases, preference being given to jury cases. The second week is devoted to the criminal docket. The substance of defendant’s proposition is that he can pray for'a jury, and withhold the deposit until the case is reached on the docket for trial, then make his deposit, and demand the jury. That the court is bound therefore to keep the jury in attendance to see if the party will be entitled to it. The case was not reached at the April term; and some weeks after the defendant made the deposit. At the next term, January, 1879, when the case was called for trial, the defendant exhibited the clerk’s receipt. The court refused to order a jury, on the ground that it was too late, and that the application had already been overruled. We think that the application was not too late, had it been made de novo and in due form. The first application had been overruled, and until renewed there was none before the court. The fact that, the court had at the previous term overruled an application because no deposit had been made, did not preclude another application, at a subsequent term, when the case was first called and fixed for trial, and the deposit had been made.
The sureties have interposed various defences, of which it will be necessary to notice but one. They contend that on the 12th of April, 1876, when the receiver notified Locke that his salary as station and ticket agent was suspended, and when he employed him at a different salary, to do different work in another parish, and assisted him in obtaining an appointment as a United States mail agent, that Locke’s *659 ■employment for which they were sureties, then terminated; and that his resumption of duty, two months later, as station and ticket agent at Monroe, must be considered as another and distinct employment, for which they are not bound. We have seen that Locke’s employment was temporary and precarious, being at the pleasure of the receiver. That the receiver, in the exercise, of this absolute discretion and power, notified Loeke that, as his services were no longer needed as station agent, in consequence of the overflow, his salary would be suspended. That he then employed Loeke at a salary of $60 per month, to run a line of skiffs in Richland parish. That Locke in pursuance of this new employment, spent two months time in said new business; and by consent and assistance of Green obtained the position of route agent. By the 20th section of the official instructions of the postoffice department to employees of the railway mail service, as well as by the 787th section of the Postal Regulations, route agents are prohibited while on duty as ■such from “ engagement at any time, in any occupation of profit or emolument,” and are enjoined to “ confine themselves wholly to the duties imposed upon them by the department.” “ The time while off actual duty is for rest and study.” For the performance of these duties Locke took an oath of office. He accepted ancl undertook them with Green’s assent. That employment was wholly inconsistent with Ms being the servant of the railroad, and his acceptance thereof was necessarily a termination of his emplpyment as such. The transaction implied on his part, as well as on that of Green, an end of his previous engagement. There is no principie of law by which the obligation of the sureties in this case can be extended to any subsequent services rendered by Locke, as station agent at Monroe. Whether those services were rendered by him, by tacit or express agreement, at the same rates as before or not, is immaterial. It was another engagement. The obligation of the first had terminated, and the sureties never assented to its renewal.
“ Suretyship cannot be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract.” Civil Code 3039.
It cannot be presumed that because a person is willing at one time to guarantee the honesty of another, that he intends to enter into a continuing guarantee of his fidelity for all time, and as often as the person employing him may see fit to engage him. The obligation of t;he surety is voluntary on his part, without profit or advantage. Courts uniformly construe his obligations strictly, and refuse to extend them toy implication, or construction. See McGuire vs. Wooldridge, 6 R. 50; Miller vs. Stewart, 9 Wheat. 680; Fasnacht vs. Winkelman, 21 A. 727; *660 Gersen vs. Hamilton, 30 A. 737; Troplong du Cautionment, p. 143, No. 155.
It is therefore ordered and decreed that the judgment appealed from is reversed and set aside as to the sureties Mullin and Oobb, and as to them plaintiff’s demand is rejected. It is further ordered and decreed that as to defendant Locke, said judgment is affirmed with costs.